## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUAN RAFAEL CABREJA BUENO,** | : | **CIVIL ACTION** |
| *Petitioner,* | : | |
| | : | **NO. 26-304** |
| **v.** | : | |
| | : | |
| **DAVID O'NEILL***, Acting Field Office* | : | |
| ***Director, Philadelphia Field Office*** | : | |
| ***Immigration and Customs*** | : | |
| ***Enforcement, et al.,*** | : | |
| *Respondents.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                              FEBRUARY 13, 2026

# MEMORANDUM OPINION

## INTRODUCTION

Before this Court is Petitioner Juan Rafeal Cabreja Bueno's, ("Mr. Cabreja" or "Petitioner"), amended petition for a writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241, (the "Petition"), (ECF 8), challenging his detention by the Department of Homeland Security, ("DHS"), and his request for a preliminary injunction, (ECF 2). In the Petition, Mr. Cabreja, a native and citizen of the Dominican Republic that was paroled into the United States in December 2022, contends that he is being illegally detained pursuant to 8 U.S.C. § 1226(a) because he was not provided a bond hearing before an Immigration Judge, ("IJ"). In their response, Respondents,[1] (hereinafter, the "Government"), argue that this Court lacks jurisdiction to grant the relief sought — *i.e.*, release from custody pending a decision on Petitioner's immigration status — or to intervene in Petitioner's immigration proceedings. (ECF 11). In the alternative, the Government

---

[1]    Respondents will be addressed collectively as the "Government." For the record, the named Respondents are David O'Neill, in his official capacity as Field Office Director of Enforcement and Removal Operations, Philadelphia Field Office, Immigration and Customs Enforcement, Kristi Noem, in her official capacity as the DHS Secretary, Pamela Bondi, in her official capacity as the Attorney General of the United States, the Warden of the Philadelphia Federal Detention Center, and the Executive Office for Immigration Review. (ECF 8 at pp. 5-6).

argues that the Petition should be dismissed on the merits because Petitioner is being lawfully detained pursuant to 8 U.S.C. § 1225(b)(1) and, as such, his detainment without a bond hearing before an IJ does not offend due process. (*Id.*). The issues whether to grant the habeas petition and the preliminary injunction have been fully briefed and are ripe for disposition. For the reasons set forth herein, Mr. Cabreja's *habeas corpus* Petition is granted, *in part,* and the request for a preliminary injunction is denied.

## FACTUAL BACKGROUND

The following facts are undisputed as gleaned from the Petition:

On November 10, 2022, Mr. Cabreja, a native and citizen of the Dominican Republic, was arrested after entering the United States at the U.S.-Mexico Border. (ECF 8 at ¶ 20). Upon a determination that Mr. Cabreja was not a citizen or national of the U.S. and did not possess a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act, (the "INA"), the United States Customs and Border Patrol, ("CBP"), issued Mr. Cabreja a signed and dated Notice and Order of Expedited Removal pursuant to Section 1225(b)(1) of the INA, (hereinafter, the "Notice and Order of Expedited Removal"), also referred to as Form I-860. (ECF 11-1). Sometime in December 2022,[2] CBP paroled Mr. Cabreja into the United States by means of the DHS Secretary's discretionary parole authority under 8 U.S.C. § 1182(d)(5), ("Section 1182(d)(5)").[3] (ECF 11 at p. 4; ECF 11-4).

---

[2]    CBP officials also completed a Form I-213 and a Form I-813. (*See* ECF 11-3). Per the Form I-813, Mr. Cabreja did not claim to fear persecution or torture if returned to the Dominican Republic. (*Id.* at p. 2).

[3]    The Government provides a document labeled as "Form I-94," which appears to show that Mr. Cabreja had been paroled into the United States for humanitarian reasons. (ECF 11-4, Humanitarian Parole Doc., at p. 2). CBP issues Form I-94 to noncitizens for whom they have authorized parole. *See* Humanitarian or Significant Public Benefit Parole for Aliens Outside the United States, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/humanitarian/humanitarian_parole (last visited Feb. 12, 2026). The process is described as: ("A CBP officer inspects the beneficiary at the port of entry. If CBP authorizes parole for the beneficiary, CBP will issue the parolee a Form I-94, Arrival/Departure Record, documenting the length of their parole period.). Form I-94 in this case provides a photo of Mr. Cabreja without any other information. (ECF 11-4 at p. 2). As such, it is not clear from the document when Mr. Cabreja was released. (*Id.*). However, at the hearing on his motion for temporary restraining order and preliminary injunction, Mr. Cabreja's counsel affirmed that he was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5) and did not refute the parole date of December 2022. (Hr'g Tr. on Mot. for TRO and Prelim. Inj., at 4:4-7).

After he was paroled into the United States, Mr. Cabreja resided in Philadelphia, Pennsylvania, regularly attending check-ins with the United States Immigration and Customs Enforcement, ("ICE").  (ECF 8 at ¶¶ 24, 25).  Mr. Cabreja's parole expired prior to January 2026.[4]  On January 16, 2026, while attending a regularly scheduled ICE check-in, Mr. Cabreja was arrested, taken into custody, and is currently detained at the Federal Detention Center in Philadelphia, ("the FDC").[5]  (*Id.* at ¶ 30).  Since his detainment, Mr. Cabreja has not received a bond hearing to assess whether he is a danger to persons or property or is a flight risk such that his continued detention is necessary.

On January 16, 2026, Mr. Cabreja filed his original *habeas* petition, (ECF 1), and a motion for temporary restraining order and preliminary injunction, (ECF 2).  This Court granted a temporary restraining order, *in part*, which required the Government to keep Mr. Cabreja at the FDC until his Petition was resolved.  (ECF 3).  On January 28, 2026, Mr. Cabreja filed an amended *habeas* petition, (the "Petition"), (ECF 8), to which the Government filed an answer, (ECF 11).  On February 3, 2026, this Court extended the temporary restraining order for good cause to allow for a hearing on Mr. Cabreja's preliminary injunction request, (ECF 12).  The evidentiary hearing was held on February 6, 2026, (*see* ECF 14).

**LEGAL STANDARD**

A writ of *habeas corpus* is a mechanism by which someone who is held unlawfully in the custody of a government may challenge the legality of his or her detention.  This right to challenge one's unlawful detention is afforded to every person within the United States, guaranteed by the United States Constitution.  *See* U.S. Const. Art. I, § 9 cl. 2.[6]  A federal district court is authorized to grant a writ of *habeas corpus* under 28 U.S.C. § 2241 when the petitioner is "in custody under

---

[4]    In its response to Mr. Cabreja's Petition, the Government claims that Mr. Cabreja's parole had been "terminated."  (ECF 11 at p. 2).  At the hearing on Mr. Cabreja's motion for temporary restraining order and preliminary injunction, the Government asserted that Mr. Cabreja's parole had "expired."  (Hr'g Tr. on Mot. for TRO and Prelim. Inj. at pp. 17:19 – 22:8).  Mr. Cabreja's counsel affirmed that Mr. Cabreja's parole had "just expired."  (*Id.* at pp. 10:21 – 11:7).

[5]    Upon Mr. Cabreja's arrest, a deportation officer completed a Form I-213 and a Form I-813.  (*See* ECF 11-2).  According to the Form I-813, Mr. Cabreja is to receive a credible fear determination.  (*Id.* at pp. 3-4).

[6]    The United States Supreme Court has held that the writ of *habeas corpus* may only be suspended by a "clear and unambiguous statement of congressional intent."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001), *superseded on other grounds by Nasrallah v. Barr*, 590 U.S. 573 (2020).

or by color of the authority of the United States . . . in violation of the Constitution and/or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). The burden is on the petitioner to show that his detention/custody is in violation of the Constitution and/or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941). The Fifth Amendment of the United States Constitution entitles noncitizens[7] to due process of law in deportation proceedings. *See Serrano-Alberto v. AG United States*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including [noncitizens] in immigration proceedings who are entitled to due process of law . . .").

**DISCUSSION**

In his *habeas* Petition, Mr. Cabreja argues that the Government has detained him in violation of the INA, and the Due Process Clause of the Fifth Amendment of the United States Constitution. (ECF 8 at ¶¶ 40-56). For his INA violation claim, Mr. Cabreja argues that the Government has no authority to detain him pursuant to 8 U.S.C. § 1225(b)(1), ("Section 1225(b)(1)"), and that the INA provisions that could apply to him – either 8 U.S.C. § 1226(a), ("Section 1226(a)") which require either a bond hearing, or 8 U.S.C. § 1231(a)(6), ("Section 1231(a)(6)")[8] – which allows for a custody redetermination hearing be provided. (*Id.* at ¶¶ 40-

---

[7]     While the Immigration and Nationality Act ("INA") uses the term "alien" to describe individuals within the United States who are undocumented, *see, e.g.*, 8 U.S.C. § 1225, this Opinion uses the term "noncitizen." *See Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Barton v. Barr*, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))). For purposes of interpretation, these terms should be considered interchangeable as used in this Opinion and the accompanying Order.

[8]     "Section 1231 prescribes detention for aliens during their 'removal period,' which begins once 'the order of removal becomes administratively final.'" *Inestroza-Tosta v. AG United States*, 105 F.4th 499, 513 (3d Cir. 2024) (first quoting 8 U.S.C. § 1231(a)(2); then quoting 8 U.S.C. § 1231(a)(1)(B)(ii)). However, the Government concedes that, because Mr. Cabreja has not yet received a credible fear interview after being paroled, he is subject to Section 1225(b)(1), not Section 1231. (Hr'g Tr. on Mot. for TRO and Prelim. Inj. at p. 23:3–9). As such, this Court will not consider Mr. Cabreja's Section 1231 argument.

50).  As for his constitutional claim, Mr. Cabreja argues his detention violates his Fifth Amendment right to due process because the Government failed to conduct an individualized assessment to determine if he was eligible for release on bond, *i.e.* a bond hearing.  (*Id.* at ¶¶ 51-56).  As such, Mr. Cabreja seeks a declaration that his detention is pursuant to either Section 1226(a) or Section 1231(a)(6), and that he either be immediately released from detention or, in the alternative, provided a bond or custody redetermination hearing.  (*Id.* at ¶¶ 50, 54-55).

### *Mr. Cabreja is Entitled to Habeas Relief*

Mr. Cabreja argues that he is being unlawfully detained without a bond hearing in violation of Section 1226(a).  (ECF 8 at ¶¶ 40-50).  In response, the Government argues that this case is unlike the hundreds of cases across the country rejecting the Board of Immigration Appeals', ("BIA"), recent interpretation of 8 U.S.C. § 1225(b)(2), ("Section 1225(b)(2)"), in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (BIA 2025).  (ECF 11 at p. 3).  The Government contends that this case is different because Mr. Cabreja was subject to expedited removal proceedings pursuant to Section 1225(b)(1) when he was first detained by CBP at the U.S.-Mexico Border and subsequently released on parole pursuant to Section 1182(d)(5).  (*Id.* at pp. 2, 12-16).  The Government further argues that because Mr. Cabreja's parole period had terminated and this Court does not have jurisdiction to review the revocation of parole,[9] the Government can mandatorily detain him pursuant to Section 1225(b)(1) during the pendency of his expedited removal proceedings.  (*Id.* at p. 16).  The Government also argues that Mr. Cabreja's detention is constitutional.  (*Id.* at pp. 16-19).  This Court is unpersuaded.

---

[9]    The fact that Mr. Cabreja's parole expired prior to his detainment on January 16, 2026 is not disputed.  Therefore, this Court will not consider the Government's arguments regarding its jurisdiction to review the "revocation" of Mr. Cabreja's parole as it would seem no such revocation occurred.

*Section 1225(b)(1) Does Not Apply*

The United States Supreme Court, ("Supreme Court"), has identified a distinction between Sections 1225(b) and 1226(a): "U.S. immigration law authorizes the Government to detain <u>certain [noncitizen] seeking admission into the country</u> under [Sections] 1225(b)(1) and (b)(2). It also authorizes the Government to *detain certain [noncitizens] already in the country* pending the outcome of removal proceedings under [Sections] 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added).[10]

Under Section 1225(b)(1), noncitizens "who satisfy two criteria may be subject to expedited removal" proceedings:

> First, those noncitizens are "inadmissible" to the United States either because they lack proper entry documents or because they engaged in fraud or willfully misrepresented a material fact on their application for admission. 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7) (grounds of inadmissibility). Second, those noncitizens fall into at least one of two provisions of the expedited removal statute: (1) they "[are] arriving in the United States[,]" 8 U.S.C. § 1225(b)(1)(A)(i), and thereby fall into what is known as the "Arriving Aliens Provision"; and/or (2) they "have not been admitted or paroled" into the United States and have "not affirmatively shown" to an immigration officer's satisfaction that they have been "physically present in the United States continuously for [a] 2-year period immediately prior to the date of the determination of inadmissibility[,]" *id.* § 1225(b)(1)(A)(iii)(II) and thereby fall into what is known as the "Designation Provision."

*Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *9 (E.D.N.Y. Nov. 28, 2025) (alterations in original). In other words, "Section 1225(b)(1) governs noncitizens: (1) who are inadmissible for lack of proper entry documents or because they engaged in fraud or a willful misrepresentation of a fact on their application for admission; and (2) who fall within either the 'Arriving Aliens Provision' or the 'Designation Provision.'" *Id.* at *10 (citing 8 U.S.C.

---

[10]    *See also Dep't of Homeland Security v. Thuraissigiam*, explaining that Congress expressly differentiated in INA between the process due to persons who have "not been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" and those who have been so present. 591 U.S. 130, 108-09 (2020).

§ 1225(b)(1)(A)(i), (iii)(II)). "If the noncitizen is inadmissible and does not indicate an intent to apply for asylum or express a fear of prosecution or torture or fear of returning to their country of origin, [they are issued] a Notice and Order of Expedited Removal[.]" *Id.* at *9. "[Noncitizens] who are placed in expedited removal proceedings under Section 1225(b)(1) are subject to mandatory detention." *Vasquez-Rosario v. Noem*, No. 25-CV-7427, 2026 WL 196505, at *3 (E.D. Pa. Jan. 26, 2026) (citing 8 U.S.C. §§ 1225(b)(1)(B)(ii), (iii)(IV)). However,

> [i]mmigration law has long allowed the Executive Branch to exercise its discretion to temporarily allow into the United States noncitizens who are applying for admission to the country instead of holding them in detention. *See* 8 U.S.C. § 1182(d)(5)(A). Currently, the DHS Secretary holds that parole authority by statute. *See id.* Parole may be granted "under such conditions as [the DHS Secretary] may prescribe" and "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *Id.* Parole "shall not be regarded as an admission of the alien." *Id.* And the DHS Secretary may, in their discretion, terminate any grant of parole and return the noncitizen "to the custody from which he was paroled." *Id.* At that point, the noncitizen's "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

*Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 64 (D.D.C. 2025) (footnote omitted).

### *Designation Provision*

The Designation Provision of Section 1225(b)(1) allows the Attorney General to designate for expedited removal a noncitizen

> who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . .

8 U.S.C. § 1225(b)(1)(A)(iii)(II). As the *Rodriguez-Acurio* court explained,

> [8 U.S.C. § 1225(b)(1)(A)(iii)(II)] does not read that a noncitizen is eligible for expedited removal if that person "*is* not currently on parole." Instead, it ties the ability to be designated for expedited removal to whether the noncitizen "has not *been* . . . paroled," leaving open the possibility that "whether a noncitizen's parole is active, or has expired or been terminated, does not matter."

*Rodriguez-Acurio*, 2025 WL 3314420, at *15 (quoting *Coal. for Humane Immigrant Rts.*, 805 F. Supp. 3d at 83) (emphasis added); *see also Hewitt v. United States*, 606 U.S. 419, 427 (2025) (explaining that Congress' decision to "employ[] the present-perfect tense—thereby requiring evaluation of whether 'a sentence . . . *has* . . . been imposed'" was a "distinction [that] makes a difference" when construing statutes).  As such, this Court, incorporating the well-reasoned opinions of other district courts, finds that the "the Designation Provision forbids the expedited removal of noncitizens who have been, at any point in time, paroled into the United States." *Coal. for Humane Immigrant Rts*, 805 F. Supp. 3d at 83; *See also Rodriguez-Acurio*, 2025 WL 3314420, at *22; *Vasquez-Rosario*, 2026 WL 196505, at *7; *Qasemi v. Francis*, No. 25-cv-10029, 2025 WL 3654098, at *9, *11 (S.D.N.Y. Dec. 17, 2025) (same) (citing cases); *Salgado Bustos v. Raycraft*, No. 25-cv-13202, 2025 WL 3022294, at *6 (E.D. Mich. Oct. 29, 2025) (same); *Munoz Materano v. Arteta*, No. 25-cv-6137, 804 F. Supp. 3d 395, 414 (S.D.N.Y. Sept. 12, 2025) (same); *Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025) (same).

Additionally, the expiration of parole does not subject a noncitizen to mandatory detention pursuant to Section 1182(d)(5)(A). As such, Section 1182(d)(5)(A) provides that

> when the purposes of such parole shall . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).  The *Coalition for Humane Immigrant Rights* court explained that this provision means only that "the noncitizen is physically brought back into immigration detention ('custody') and then legally continues to be treated as an 'applicant for admission', because his parole itself did not constitute an admission."  805 F. Supp. 3d at 85.  "Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are

not subjected to expedited removal." *Qasemi*, 2025 WL 3654098, at *11 (internal quotations and citations omitted); *see also Rodriguez-Acurio*, 2025 WL 3314420, at *18 ("[A]ny other applicant for admission residing in the United States for more than three years would be detained under Section 1226").

To the extent the Government argues that Mr. Cabreja's detention is lawful pursuant to the Designation Provision of Section 1225(b)(1), that argument is unavailing because Mr. Cabreja, who was released on parole into the United States in December 2022, is not subject to said provision. Mr. Cabreja sought admission when he arrived at border between the United States and Mexico more than three years before his arrest in January 2026. Upon detaining him at or around the time of his entry into the United States, the Government issued him a Notice and Order of Expedited Removal under Section 1225(b)(1) and released him on humanitarian parole pursuant to Section 1182(d)(5)(A). Since that time, he has been living, apparently without criminal incident, openly in the United States. Further, Mr. Cabreja has dutifully reported to the ICE office — where he was arrested — at routine check-ins set by Government. Regardless of Mr. Cabreja's expired parolee status, he is not now subject to mandatory detention pursuant to the Designation Provision of Section 1225(b)(1).

### *Arriving Alien Provision*

The Arriving Alien Provision requires "expedited removal and detention of any noncitizen who is inadmissible due to lack of entry documents or fraud or willful misrepresentation on an admission application *and* 'who is arriving in the United States.'" *Rodriguez-Acurio*, 2025 WL 3314420, at *19 (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). The INA "does not define the term 'arriving,'" *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d at 89.

The United States Court of Appeals for the Third Circuit, (the "Third Circuit"), has not considered the meaning of the term "arriving alien" and/or any connection it may have to 8 U.S.C.

§ 1225(b)(1)(A)(i), and district courts "must exercise independent judgment in determining the meaning of statutory provisions," rather than deferring to agencies' interpretations. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024). As other district courts have recently found, "the plain meaning of the word 'arriving' is being 'in the process of reaching' a destination." *Rodriguez-Acurio*, 2025 WL 3314420, at *20 (quoting *Coal. for Humane Immigrant Rts.*, 2025 WL 2192986, at *28). The terms "'arriving,' 'arrival,' and 'arrive' in Section 1225 appear to refer to a process that occurs upon a physical entry into the United States, 'not an interminable . . . status' that attaches to a noncitizen upon arrival." *Id.* (quoting *Coal. for Humane Immigrant Rts.*, 805 F. Supp. 3d at 90).

An "arriving alien" is thus a person "who is in the process of reaching the United States." *Id.*; *see also Coal. for Humane Immigrant Rts.*, 805 F. Supp. 3d at 90 (explaining that "arriving" "would not naturally be read to refer to someone who previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States (beyond their original destination) for an indefinite period of time.").

To the extent the Government argues that Mr. Cabreja's detention is lawful pursuant to the Alien Arriving Provision of Section 1225(b)(1), that argument is unavailing because Mr. Cabreja, who was released on parole into the United States in December 2022, is no longer in the process of *arriving* in the United States. *See Vasquez-Rosario v. Noem*, No. 25-CV-7427, 2026 WL 196505, at *9; *Rodriguez-Acurio*, 2025 WL 3314420, at *21 (finding that a petitioner was not still "in the process of 'arriving' in the United States" after she had lived there for over four years); *Salgado Bustos*, 2025 WL 3022294, at *5 (agreeing that a petitioner "was no longer an 'arriving alien' for purposes of § 1225(b)(1)(A)(i)" because he "had been living in the United States, far from the southern border, for almost three years"); *Qasemi*, 2025 WL 3654098, at *6 ("It would try any plain understanding of the term arrival to classify an individual like [the petitioner] who

10

has lived and worked in the United States for over a year prior to his re-detention as an arriving alien."). As noted, Mr. Cabreja has been living, apparently without criminal incident, openly in the United States for over three years. Therefore, Mr. Cabreja is not subject to mandatory detention pursuant to the Arriving Aliens Provision of Section 1225(b)(1).

*Violation of Section 1226(a)*

Having determined that Mr. Cabreja cannot be subject to mandatory detention under Section 1225(b)(1), this Court next considers the lawful basis, if any, for Mr. Cabreja's detention. As noted, Section 1226(a) "applies to [noncitizens] already present in the United States." *Jennings*, 583 U.S. at 303. Section 1226(a) provides discretionary authority to arrest and detain a noncitizen "pending a decision on whether [they are] to be removed from the United States." 8 U.S.C. § 1226(a). Furthermore:

> *[Noncitizens] who are arrested and detained may generally apply for release on bond or conditional parole.* [8 U.S.C.] §1226(a)(2). To secure release, the [noncitizen] must show that he does not pose a danger to the community and that he is likely to appear for future proceedings. 8 CFR §§ 236.1(c)(8), 1236.1(c)(8) (2020); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999). If DHS denies the [noncitizen]'s request, the [noncitizen] may request a bond hearing in front of an [IJ] by filing an application for a change in the [noncitizen]'s detention conditions. *See* 8 CFR §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1).

*Johnson v. Guzman Chavez*, 594 U.S. 523, 527-28 (2021) (footnote omitted) (emphasis added).

Here, it is apparent to this Court that Section 1226(a) applies to Mr. Cabreja's circumstance given that he has been in this country for more than three years. Therefore, under Section 1226(a), he is entitled to a bond hearing upon request. Because Mr. Cabreja has not been provided a bond hearing, his detention violates the laws of the United States.

*Violation of Due Process*

In addition to being an unlawful detention, this Court finds Mr. Cabreja's detention unconstitutional. "[The] Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether Mr. Cabreja, a person within the United States, has been denied due process, this Court applies the *Mathews v. Eldridge* balancing test and weighs the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976).

As for the *Mathews* private interest factor, Mr. Cabreja's freedom, is paramount here. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 695 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Thus, the first factor of private interest weighs heavily in Mr. Cabreja's favor.

The second *Mathews* factor — the risk of an erroneous deprivation of Mr. Cabreja's rights — also weighs in his favor. Based upon the current record, the Government has detained Mr. Cabreja without any individualized determination[11], and it is unclear what the Government intends as to the length of Mr. Cabreja's detainment. This Court will not countenance a situation in which Mr. Cabreja could be subject to months of detention prior to any opportunity to be heard. Finally,

---

[11]   "To determine whether a [noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). "These factors may include any or all of the following: (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States." *Guerra*, 24 I. & N. Dec. at 40 (citing *Matter of Saelee*, 22 I. & N. Dec. 1258 (BIA 2000)).

as to the Government's interest, the Court finds that it does not supersede the deprivation of Mr. Cabreja's liberty interest.  Although "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), a bond hearing would not impose additional administrative burdens on the Government's interests as Section 1226(a) already allows Mr. Cabreja to apply for release on bond, *see Johnson*, 594 U.S. at 527.

In sum, because the *Mathews* factors weigh heavily in Mr. Cabreja's favor, his detention violates his due process rights under the Constitution's Fifth Amendment and is unconstitutional.

**CONCLUSION**

Because the Government's mandatory detention of Mr. Cabreja pursuant Section 1225(b)(1) is "in violation of the Constitution and/or laws or treaties of the United States," *habeas* relief is warranted. 28 U.S.C. § 2241(c)(1), (3).  As a general matter, a *habeas* court has "the power to order the conditional release of an individual unlawfully detained — though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).  Because Mr. Cabreja does not appear to be a danger to the community nor a flight risk, and is being unlawfully and unconstitutionally detained, this Court finds that he is to be immediately released.  Additionally, because this Court finds that Mr. Cabreja is entitled to immediate *habeas* relief there is no need to decide his request to convert the January 20, 2026 temporary restraining order into a preliminary injunction. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.